UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | | |
|---|---|---|
| QUINTEC FILMS, CORPORATION, TERRY JONES, CHARLES M. LEONARD, and MANULI STRETCH USA, INC. | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:06-cv-78 |
| PINNACLE FILMS, INC., | ) ) | Judge Mattice |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

Defendant Pinnacle Films, Inc.'s ("Defendant Pinnacle") Motion for Summary Judgment or Partial Summary Judgment is presently before the Court. [Court Doc. 52, Mots. for Sum. J.]

Plaintiffs initiated the instant patent litigation, which alleges that Defendant Pinnacle infringed U.S. Patent No. 6,265,005, on December 21, 2006. (Court Doc. 1, Compl.) Defendant Pinnacle contends that "all claims of the patent-in-suit, including all of the claims that were the subject to a second Ex Parte Reexamination by the United States Patent and Trademark Office ("USPTO"), were substantively changed in scope" and that it is either entitled to summary judgment on non-infringement as a matter of law with respect to all claims asserted in the Amended Complaint, or partial summary judgment on non-infringement up through and including the day before the issuance of the second Reexamination Certificate. (Court Doc. 53, Def.'s Br. at 1-2.) Plaintiffs Quintec Films Corporation, Terry Jones, Charles M. Leonard, and Manuli Stretch USA, Inc. (collectively "Plaintiffs") oppose the Motion for Summary Judgment, or in the Alternative, Motion for

Partial Summary Judgment. Plaintiffs contend that the scope of the claims of the '055 patent were not changed after the issuance of the second Reexamination Certificate. (Pls.' Resp. Br. at 13–19.)

For the reasons explained below, the Court will **GRANT** Defendant Pinnacle's Partial Motion for Summary Judgment and will **DENY** Defendant Pinnacle's Motion for Summary Judgment.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the

case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.  FACTS

The facts, viewed in the light most favorable to Plaintiffs, are as follows.

U.S. Patent No. 6,265,055 (the '055 Patent), titled "Multilayer Stretch Cling Film" contains, as originally issued, a twenty-eight claim invention that relates to a "multi-layer stretch cling flims having at least seven individual layers in the film composition offering acceptable cling performance, good balance of strength and good elongation properties." (Court Doc. 53-1, '055 Patent Col. 1, Lines 1-5, Abstract.)  The '055 Patent contains two independent claims, Claim 1 and Claim 28, while the remaining claims (Claims 2-27) all depend upon Claim 1.  (*See* U.S. Patent No. 6,265,055 at Col. 9 Line 40 to Col. 12 Line 65.)

Claim 1 of the '055 Patent originally encompassed the following:

"A multi-layer, thermoplastic stretch wrap film containing seven polymeric layers, comprising:

>  (a) two outer layers, at least one of which having a cling performance of at least 100 grams/inch, said outer layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, ultra low density polyethylene resins, said resins being

-3-

homopolymers, copolymers, or terpolymers, of ethylene and alpha-olefins; and

(b) five inner layers, with each layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, ultra low density polyethylene, and metallocene-catalyzed linear low density poly ethylene resins; said resins are homopolymers, copolymers, or terpolymers, of ethylene and C3 to C20 alpha-olefins."

Claim 28 of the '055 Patent originally encompassed the following:

"A multi-layer, thermoplastic stretch wrap film containing seven polymeric layers, comprising:

(a) two outer layers, at least one of which having a cling performance of at least 100 grams/inch, said outer layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, and ultra low density polyethylene resins, said resins being homopolymers, copolymers, or terpolymers, of ethylene and alpha-olefins; and

(b) five inner layers, with each layer being selected from the group consisting of linear low density polyethylene, very linear low density polyethylene, ultra linear low density polyethylene, and metallocene-catalyzed linear low density polyethylene resins; said resins being homopolymers, copolymers, or terpolymers, of ethylene and C3 to C20 alpha-olefins,

wherein at least one of said inner layers comprises a metallocene catalyzed linear low density polyethylene resin with a melt index of 0.5 to 3 dg/min and a melt index ratio of 16 to 80."

(Court Doc. 56-16, U.S. Patent No. 6,265,055 Cols. 9-12.)

On December 21, 2006, Plaintiffs filed the instant lawsuit which alleges that Defendant Pinnacle infringed the '055 Patent. (Court Doc. 1, Compl.) During the course of this case, however, the '055 Patent was subjected to two separate patent reexamination proceedings before the USPTO. Each reexamination proceeding resulted in changes to Claims 1 and 28 of the '055 patent. The first Reexamination Certificate issued by the

-4-

USPTO on January 2, 2007 altered Claim 1, which effectively altered Claims 1-27 because such claims all depend directly or indirectly on Claim 1. The Ex Parte Reexamination Certificate provided that Claim 1 of the '055 Patent was amended to encompass the following:

"A multi-layer, thermoplastic stretch wrap film containing seven *separately identifiable* polymeric layers, comprising:

> (a) two *identifiable* outer layers, at least one of which having a cling performance of at least 100 grams/inch, said outer layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, ultra low density polyethylene resins, said resins being homopolymers, copolymers, or terpolymers, of ethylene and alpha-olefins; and
>
> (b) five *identifiable* inner layers, with each layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, ultra low density polyethylene, and metallocene-catalyzed linear low density poly ethylene resins; said resins are homopolymers, copolymers, or terpolymers, of ethylene and C3 to C20 alpha-olefins.

(Court Doc. 53-3, January 2, 2007 Ex Parte Patent Reexamination Certificate Col. 1.). On April 3, 2007, Plaintiffs amended the Complaint to assert infringement of the '055 Patent claims, which were altered as a result of the first Ex Parte Reexamination. (Court Doc. 20, Amend. Compl.)

Shortly after issuing the first Reexamination Certificate, the '055 Patent was subjected to a second Reexamination. (Court Doc. 38, USPTO Office Action at 1.) On April 7, 2009, the USPTO issued a Reexamination Certificate, which amended Claims 1 and 28 of the '055 Patent. Claim 1 of the '055 Patent was amended to encompass the following:

"A multi-layer, thermoplastic stretch wrap film containing seven polymeric layers, comprising:

-5-

(a) two outer layers, at least one of which having a cling performance of at least 100 grams/inch, said outer layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, ultra low density polyethylene resins, said resins being homopolymers, copolymers, or terpolymers, of ethylene and alpha-olefins; and

(b) five inner layers, with each layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, ultra low density polyethylene, and metallocene-catalyzed linear low density poly ethylene resins; said resins are homopolymers, copolymers, or terpolymers, of ethylene and C3 to C20 alpha-olefins;

*wherein each of said two outer layers and each of said five inner layers have different compositional properties when compared to a neighboring layer.*"

Claim 28 of the '055 Patent was changed to encompass the following:

"A multi-layer, thermoplastic stretch wrap film containing seven polymeric layers, comprising:

(a) two outer layers, at least one of which having a cling performance of at least 100 grams/inch, said outer layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, and ultra low density polyethylene resins, said resins being homopolymers, copolymers, or terpolymers, of ethylene and alpha-olefins; and

(b) five inner layers, with each layer being selected from the group consisting of linear low density polyethylene, very linear low density polyethylene, ultra linear low density polyethylene, and metallocene-catalyzed linear low density polyethylene resins; said resins being homopolymers, copolymers, or terpolymers, of ethylene and C3 to C20 alpha-olefins,

wherein at least one of said inner layers comprises a metallocene catalyzed linear low density polyethylene resin with a melt index of 0.5 to 3 dg/min and a melt index ratio of 16 to 80; *and wherein each of said two outer layers and each of said five inner layers have different compositional properties when compared to a neighboring layer.*"

(Court Doc. No. 56-15, April 7, 2009 USPTO Reexamination Certificate Cols. 1-2.)

On December 23, 2008, the USPTO issued a Notice confirming the patentability of the '055 patent's claims, which were amended during the second Patent Reexamination proceeding. (Pl.'s Br. at 10.) On April 7, 2009, the USPTO issued a second Reexamination Certificate for the '055 patent, which confirmed that claims 1 and 28 were determined to be patentable as amended. (*Id.*)

The instant motion for summary judgment or, in the alternative, partial summary judgment requests that the Court either find that the Defendant Pinnacle does not infringe the newly amended claims of the '055 patent or alternative that claims 1 and 28 were substantively changed after the issuance of the second Ex Parte Reexamination certificate.

## III. ANALYSIS

### A. Defendant's Pinnacle's Extension of Time to File Its Reply Brief

The Court has reviewed Defendant Pinnacle's Motion for Extension of Time. [Court 59.] In light of the lack of prejudice, the Court will **GRANT** Defendant's Motion for an Extension of Time and will accept its reply summary judgment and/or partial summary judgment brief.

### B. Defendant's Motion for Summary Judgment

Defendant Pinnacle's motion for summary judgment requests that the Court find non-infringement on the basis that the claims of the '055 patent no longer exist. The briefing before the Court, however, contains no discussion or dispute as to what the infringing technology encompasses, or whether Defendant Pinnacle infringes the amended claims of the '055 patent under the doctrine of equivalents. In fact, in Defendant Pinnacle's reply brief, it admits that the instant motion is limited to the issue of whether the scope of claims 1 and 28 of the '055 patent were substantively changed in scope after the USPTO issued

-7-

Case 4:06-cv-00078   Document 121   Filed 09/18/09   Page 7 of 14   PageID #: 1244

the most recent patent reexamination certificate. (Court Doc. 66, Def.'s Reply Br. at 3-4.) Thus, the Court finds that Defendant's Motion for Summary Judgment on the issue of infringement is premature. Accordingly, the Court will **DENY** Defendant's Motion for Summary Judgment with respect to the issue of infringement.

### C.    Defendant Pinnacle's Motion for Partial Summary Judgment

The issue before the court is relatively narrow: whether latest amended to the '055 patent claims, namely the addition of the term *wherein each of said two outer layers and each of said five inner layers have different compositional properties when compared to a neighboring layer,*" substantively changed the scope of claims 1 and 28 of the '055 patent. A claim amendment made during reexamination following a prior art rejection is not *per se* a substantive change. *Laitram Corp. v. NEC Corp.,* 952 F.2d at 1357, 1361-62 (Fed. Cir. 1991). Rather, "to determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Id.* at 1362-63.

Patent reexamination is a procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U.S. patent. 35 U.S.C. § 302. A request for patent reexamination must be based upon prior art patents or publications which raise "a substantial new question of patentability." *Id.* § 303(a). Typically, the cited prior art patents or printed publications upon which such a request is based were not considered by the patent examiner during the processing of the patent application that resulted in the patent-in-suit. Once a reexamination request is granted, a patent examiner who is familiar with the technology involved with the patent conducts the reexamination.

The examiner is obligated to do so "with special dispatch." 35 U.S.C. § 305; 37 C.F.R. § 1.550(a).

Within approximately three months of the filing of the reexamination petition, the PTO will determine whether the request raises a "substantial new question of patentability" affecting any claim or claims of the patent. *Kaufman Co. v. Lantech Inc.,* 807 F.2d 970, 976 (Fed. Cir. 1986). The examiner, utilizing his expertise, determines if such a "new question" exists by comparing the prior art of record in the original patent application with the prior art cited in the request for reexamination (although the examiner is not limited to that information). 35 U.S.C. § 303(a). If the prior art patents and/or printed publications are "material" to the reexamination of at least one claim of the patent, a substantial new question of patentability exists. Thereafter, the parties are given the opportunity to provide position statements to the PTO, and the PTO reexamines the patent claims in *ex parte* fashion. If the Commissioner decides *not* to institute a reexamination proceeding, the decision is final and nonappealable.

Although patent claims may be amended, redrafted or substituted for new, albeit narrower, claims, unlike prosecution of an initial patent application, the Patent Act, 35 U.S.C. §§ 305, 314, expressly curtails the scope of reexamination, prohibiting any claim amendment that would enlarge the scope of the initial patent. *See Hoffman v. Wisner Classic Mfg Co.*, 927 F. Supp. 67, 73 (E.D.N.Y. 1996) ("An important limitation on reexamination is that no proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding. Thus, claims added or amended in a reexamination proceeding may be necessarily narrower because section 305 bars claims that enlarge the scope of original claims. Therefore, no invention can infringe

-9-

the narrower claims emerging from reexamination that would not have infringed the original claims as well.") (citations omitted).

A patentee of a reexamined patent, however, is entitled to infringement damages for the period between the date of issuance of the original claims and the date of issuance of the reexamined claims, if the original and reexamined claims are the same in scope. *See* 35 U.S.C. §§ 252, 307(b); *Tennant Co. v. Hako Minuteman, Inc.,* 878 F.2d 1413, 1417 (Fed. Cir. 1989). If an amendment to a claim during reexamination substantially changes the scope of the claim, the effect is to bar damages for the period prior to issuance of the reexamination certificate. *Shockley v. Arcan, Inc.,* 248 F.3d 1349, 1360-61 (Fed. Cir. 2001); *Laitram Corp. v. NEC Corp.,* 163 F.3d 1342, 1346 (Fed. Cir. 1998).

Conversely, under 35 U.S.C. § 252, a reissued patent is enforceable against infringing activity that occurred after the issuance of the original patent, "to the extent that its claims are substantially identical" to the claims of the original patent. Thus, "[u]nless a claim granted or confirmed upon reexamination is identical to an original claim, the patent cannot be enforced against infringing activity that occurred before issuance of the reexamination certificate." *Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997). " 'Identical' does not mean verbatim, but means at most without substantive change. . . . An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical . . . ." *Id.*

In the instant case, Plaintiffs contend that the claims of the '055 patent were not substantively changed in scope after the issuance of the second Reexamination Certification. They claim that the "specification makes it clear that neighboring layers may also be made of the same material" and that Claims 1 and 28 of the '055 patent

encompass film constructions represented by: (1) "different materials, or if made of the same material; (2) different in some other mechanical property." (Pls.' Br. at 14.) Mere reliance on the specification, however, will not suffice in meeting their burden because the Court may not simply import limitations from the written description into the claims. See *Electro Med. Sys. v. Cooper Life Science, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) ("Claims are not to be interpreted by adding limitations appearing only in the specification.").

One key rationale for this rule is that if everything in the specification were required to be read into the claims, or if structural claims were to be limited to inventions that operated precisely as a specification-described embodiment operated, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc) (citations omitted). Thus, it is the claims, not the written description, which define the scope of the patent right. See *Novo Nordisk of N. Am. v. Genentech, Inc.*, 77 F.3d 1364, 1369 (Fed. Cir. 1996); *SRI Int'l*, 775 F.2d at 1121.

Moreover, during the course of the '055 patent prosecution and reexamination, the patentees and its agents represented to the USPTO that the '055 patent encompassed a stretch wrap film that contained seven layers in which all of the layers were compositionally the same. (Court Doc. 56-6, Pls.' Ex. No. 6.) For instance, on April 11, 2005, the patentees and its agents argued that "[t]he stretch wrap film, claimed by the Patentees has seven structurally identifiable layers, but is [sic] not important whether it was seven compositionally different layers. In other words, the claimed stretch wrap may be represented by both of the following: (1) A/A/A/A/A/A/A, a film having seven structurally identifiable layers which are not compositionally different ...; and (2) A/B/C/D/E/F/G, a film

having seven ... layers which are ... compositionally different." (Court Doc. 66-2, Defs. Ex. 2.) Under the doctrine of argument based estoppel, Plaintiffs are bound by these arguments concerning claim scope. *Gillespie v. Dywidag Sys., Int'l USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007); *Lifestream Diagnostics, Inc. v. Polymer Tech. Sys., Inc.*, 109 Fed. App'x 411, 415 (Fed. Cir. 2004) (concluding that a patentee could not deny "arguments deliberately and repeatedly advanced by the patent application in regard to the scope of a claim term during prosecution.").

The USPTO examiner, however, rejected the patentees' claim that a stretch wrap film containing seven layers in which all of the layers were compositionally the same was novel because it "would have been obvious to one having ordinary skill in the art at the time the invention was made to follow the above teachings in forming a multi-layer thermoplastic stretch wrap film as taught by Miro, *et al.*, U.S. Patent No. 5, 756,219, containing seven layers, *i.e.*, the layered structure: skin, intermediate, tie, core, tie, intermediate, core; or skin, intermediate, tie, core, tie, intermediate, skin." (Def.'s Ex. 3 at 6.) The examiner also rejected claims of the '055 patent as being unpatentable in light of the declarations of Eldridge M. Mount III and Peter F. Cloren and further in view of U.S. Patent 5,749,202, the Eichbauer patent. (*Id.* at 7.)

The examiner reasoned that the Miro Patent teaches a "stretch wrap film having: (i) skin layers and (ii) at least one core layer which includes at least 25% by weight, more preferably from about 60% to about 90% by of a propylene polymer." (*Id.*) The examiner also pointed out that in Example 1 of the Miro patent, polymer compositions fully meeting the claimed resin melt index and resin density are extruded into a multilayer film having the transverse layered geometry: A/C/B/B/B/C/A. (*Id.*) The examiner then noted that "although

-12-

Miro *et al.* do not specify cling value, [it] incorporates by reference U.S. Patent 5,273,809 to Simmons ... which teaches outer layers of the LLDPE having cling values of at least about 140 gr[a]ms." (*Id.*)

In order to overcome the prior art rejections, the patentees then argued that the prior art disclosed by Miro, *et al.* did not suggest a film wherein each layer has a different compositional property when compared to a neighboring layer. This representation was repeatedly made during the course of the second reexamination proceedings. *See* Def.'s Br. at 15-16. On November 28, 2008, the patent owners presented a set of claims that included the altered claims 1 and 28, which was altered by the addition of "wherein each of the said two outer layers and each of said five inner layers have different compositional properties when compared to a neighboring layer." (Court Doc. 53-9, Def.'s Ex. 9 at 13.)

The USPTO adopted Plaintiffs' new claim limitation in its Reasons for Patentability/Confirmation, which stated that the "amended claims are directed to stretch wrap film containing seven polymeric layers wherein each of the said seven layers have different compositional properties when compared to a neighboring layer." (Court Doc. 53-10, Def.'s Ex. 10 at 2.) It also stated that the closest prior art (Miro, *et al.* and Eichbauer '202) does not teach or make obvious a stretch wrap film containing seven polymeric layers wherein each of said seven layers have different compositional properties when compared to a neighboring layer. (*Id.*) This change constituted a "limitation [that] narrowed the .. claims, substantively changing them" to no longer encompass a stretch plastic film having seven structurally identifiable layers which are not compositionally different. *Laitram Corp.*, 163 F.3d at 1349. Accordingly, the Court will **GRANT** Defendant's Motion for Partial Summary Judgment and finds that the scope of the Claims 1 and 28 of the '055 patent

were substantively changed in scope after the issuance Second Reexamination Certificate.[1]

**IV. CONCLUSION.**

For the reasons explained above, Defendant's Motion for an Extension of Time [Court Doc. 59] is **GRANTED**, Defendant's Motion for Summary Judgment [Court Doc. 52] is **DENIED,** and Defendant's Motion for Partial Summary Judgment [Court Doc. 52] is hereby **GRANTED.**

SO ORDERED this 18th day of September, 2009.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that the Memorandum and Order is limited to Plaintiffs' claims as pled in Count I of the Third Amended Complaint. Defendant's Motion for Partial Summary Judgment does not encompass or include any reference to Count II and Count III of the Third Amended Complaint. Thus, the issue of whether the claims of the '055 patent as issued in the June 2, 2009 Certificate of Correction or the July 14, 2009 Certificate of Correction were substantively changed in scope and differed from the claims of the '055 patent as they existed prior to the issuance of the Second Reexamination Certificate is not presently before the Court.